## In re CARTER.
### No. 9965.

United States Court of Appeals
District of Columbia Circuit.

Decided Aug. 1, 1949.

Writ of Certiorari Denied Dec. 12, 1949.

See 70 S.Ct. 250.

Mr. George E. C. Hayes, Washington, D. C., with whom Messrs. James A. Cobb, Washington, D. C., and Howard Jenkins, Jr., were on the brief, for appellant.

Mr. Harold H. Bacon, Assistant United States Attorney, Washington, D. C., with whom Mr. George Morris Fay, United States Attorney, and Messrs. Ross O'Donoghue and John D. Lane, Assistant United States Attorneys, Washington, D. C., were on the brief, for the United States Attorney as amicus curiae, urging dismissal of the appeal. Mr. L. Clark Ewing, Assistant United States Attorney, Washington, D. C., also entered an appearance for amicus curiae.

Mr. Philip B. Perlman, Solicitor General of the United States, Washington, D. C., reargued on behalf of the United States Attorney as amicus curiae, urging dismissal of the appeal or affirmance of the orders.

Before CLARK, WILBUR K. MILLER and PRETTYMAN, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is an appeal from orders of the District Court of the United States for the District of Columbia, which revoked the authority of appellant to do business as a bondsman in criminal cases in this jurisdiction.

The applicable statute is a local one. In pertinent part it provides: "It shall be the duty of the police court, juvenile court, and the criminal divisions of the District Court of the United States for the District of Columbia, each, to provide, under reasonable rules and regulations, the qualifications of persons and corporations applying for authority to engage in the bonding business in criminal cases in the District of Columbia, and the terms and conditions upon which such business shall be carried on, and no person or corporation shall, either as principal, or as agent, clerk, or representative of another, engage in the bonding business in any such court until he shall by order of the court be authorized to do so. Such courts, in making such rules and regulations, and in granting authority to persons to engage in the bonding business, shall take into consideration both the finan-

cial responsibility and the moral qualities of the person so applying, and no person shall be permitted to engage, either as principal or agent, in the business of becoming surety upon bonds for compensation in criminal cases, who has ever been convicted of any offense involving moral turpitude, or who is not known to be a person of good moral character. * * * Each of said courts shall require the authority of each of said persons to be renewed from time to time at such periods as the court may by rule provide, and before said authority shall be renewed the court shall require from each of said persons an affidavit that since his previous qualification to engage in the bonding business he has abided by the provisions of this chapter, and any person swearing falsely in any of said affidavits shall be guilty of perjury." [1]

Pursuant to the statute, the District Court adopted rules which provided, among other things:

"I. Every individual desiring to engage in the bonding business in criminal cases in this Court shall file with the Court a written application under oath showing

* * * * * *

"(3) whether or not he has ever been convicted of an offense involving moral turpitude;

"(4) proof of good moral character of the applicant, attested by the statements of at least two residents of the District not related to the applicant;

* * * * * *

"III. An application containing like statements shall be filed by each individual authorized bondsman desiring to continue in said business every second year thereafter on the anniversary of the Court's approval of the original application, which application must also receive the approval of a Justice of this Court before the bondsman shall be entitled to continue to appear as surety on bonds or recognizances in this Court.

* * * * * *

"VIII. Any authorization given pursuant to these rules may be revoked for good cause at any time by any Justice of this Court."

It is clear from these rules that, as required by the statute, an applicant must show that he has not been convicted of an offense involving moral turpitude and that he is known to be of good moral character. It is also clear that the authorization is for a term, at the expiration of which the same considerations govern renewal as govern original approval; and that an authorization once given may be revoked for good cause.

Appellant Carter applied for and was granted authorization to engage in the business of executing bonds. He entered upon the business.

Several weeks later the judge who had approved this application called into question a statement in it. In response to Rule I(3), above-quoted, Carter had written that he had "never been charged and/or convicted of any offense involving moral turpitude". It appears that information came to the court that in 1928, some twenty years before present events, Carter had been charged three times with violation of the laws against gambling, and in 1935, thirteen years before, had been charged with receiving stolen property. Upon learning of these charges, the court called for an explanation and then issued a rule upon Carter to show cause why his authorization to engage in the bonding business should not be revoked.

Answer was made to the rule, and hearing was held upon it. It developed that Carter had never been convicted of any of the charges made against him and, indeed, had not even been tried upon any of them. All had been nolle prossed or dismissed. So the record stood that he had never been tried, much less convicted, of any offense, whether involving moral turpitude or not. It further developed that Carter's application for authority to engage in the bonding business had been prepared by a reputable, experienced and respected member of the bar. This attorney knew of the charges against Carter. He also knew that the statute and the rules required information as

[1] 47 Stat. 1484 (1933), D.C.Code § 23—603 (1940).

to convictions only. But never having theretofore prepared one of these applications, he went to the District Court and copied the language from an application which had been approved. That application used the expression "charged and/or convicted". The attorney interpreted, the expression, in view of the statute and the rules, as meaning charged and convicted or simply convicted, visualizing a case in which a person, having been charged with one offense, might be convicted of a lesser one.

The court concluded that the statement on the application had been made in good faith, not willfully or with purpose to deceive the court. Nevertheless, the court revoked the authorization. It did so upon the ground that if, in passing upon the original application, it had had before it the facts of the charges, it would have made further inquiry into the suitability of the applicant to be a bondsman. It considered that the language used in the application, reasonably interpreted, was a misrepresentation. The conclusion, as stated by the court, was:

"This matter involves a right of a citizen to engage in the business of writing bonds in criminal cases, and this applicant, according to the record as I have it before me, has made representations of material facts, facts which if they had been disclosed to me prior to the approval by me of the application would, I am sure, have induced me to make further inquiry and investigation to ascertain whether he is a suitable person, under the law, to engage in this business, of writing bonds in criminal cases.

"However, the answer to the rule to show cause, and the statements made to me in chambers, at the request of his attorney, disclose that the representation was not made willfully or with a purpose to deceive the Court, but was made on the advice of counsel who informed the petitioner that the language used would not constitute a misrepresentation. To that interpretation I cannot subscribe, and I am of the opinion that a reasonable interpretation of the language used is that it does constitute a misrepresentation.

"Nevertheless, I am led to the conclusion that it was given in good faith, partly because of the high standing of the applicant's counsel. I shall therefore pass an order revoking the authorization given by me to the approval of the application."

The court considered that its action revoking the authorization made the application a pending one. It directed that an investigation be made. Exactly what then happened is not shown by the record, but the brief of the United States Attorney refers to an investigation by his office and by the F.B.I. His later, or supplemental, brief refers to "information rendered available to the District Court as a result of the inquiry". Appellant says his information is that an investigation was made, but that the results were not spread upon the record but were sealed by the court and made unavailable to appellant by express instruction given to the clerk. Upon oral argument in this court, it was asserted and not denied that the District Court received a report from the F.B.I. and placed it in a sealed envelope, not to be opened. Counsel for appellant and counsel for the United States Attorney all say that they have not seen and do not know the contents of the report. The United States Attorney, as will later appear, defends the propriety of this course. In any event, Carter filed some twenty-five letters attesting to his character and standing. Six months after the hearing above described, and without further ado, the court entered an order denying Carter's application.

The United States Attorney, as amicus curiae, defends the action of the District Court. He does so upon the following reasoning: An authorization by the court to a person to engage in the bonding business is a purely administrative act and, therefore, revocable at its will; that such revocation may be made if the court is misled upon the authorization, even though the representations which it deems misleading were made in good faith, not willfully or with purpose to deceive; that the court may revoke for a reason which, if originally known, would have caused it to inquire further; and that when an applica-

tion has been replaced in a pending status by a revocation order, the court may receive and consider confidential and undisclosed information and, upon such information, deny the application.

The error in the foregoing reasoning is that it ignores the key and controlling fact in the situation. The application had been granted. Carter had an authorization. He was engaged in business. The action of the court was not to deny him something he was seeking; it was to deprive him of something which he had.

■ Examples could be multiplied to illustrate the vital effect of a grant by proper authority. An applicant for admission to the bar must satisfy the authorities as to his moral character, and custom has established confidential inquiry as an element of that procedure. But when he has been admitted, his removal from practice is a disbarment, about which elaborate procedural requirements are thrown. Such removal after admission is not a mere denial of an application for admission. The same is true in respect of licenses to do business in many forms. Prior to grant, many processes are available for inquiry and information. But, once granted, the license becomes a right, and due process of law must be followed to achieve deprivation. This is true even though the license is a severely qualified one, such as a radio license.[2]

It may be true that the grant of authority to engage in the bonding business is an administrative act. But the deprivation of that right, once granted, is a judicial act, requiring due process of law.

Two features of the statute here involved make clear that the authorization to engage in the bonding business is a form of license, and hence a right, to do business. The authorization is for a term, fixed by rules of the court. And it may be revoked "for good cause". These are the customary characteristics of a limited or qualified license or right.

Because of the nature of the argument by the United States Attorney, we emphasize two negatives. The case does not involve the power or the procedure of the District Court in granting these authorizations. It does not concern the power or procedure of that court in renewing an authorization upon expiration of the stated term.

The District Court believed that it could return an application to a pending status after a permit had been issued, solely because the court later learned of circumstances which, if originally known, would have caused it to make further inquiry upon the original application. This it cannot do, any more in this case than in an admission to the bar or in respect to other forms of outstanding business licenses.

■ We hold that when an authorization to engage in the bonding business has been approved by the District Court and is outstanding, it can be revoked, prior to the expiration of its term, only upon a proceeding which contains the elements of due process of law, i. e., a hearing and revelation of all data upon which a decision is to be based.

■ The United States Attorney urges that the orders entered by the District Court are not appealable. The statute governing appeals allows them in respect to any final order.[3] That means judicial orders, of course. As we have pointed out, the orders in this proceeding were judicial orders and were, therefore, appealable. They were certainly final. The United States Attorney also lays stress upon the fact that there is no appellee. This is a common characteristic of many appealable proceedings, such as disbarments and similar matters.

The orders of the District Court will be Reversed.

[2] See National Broadcasting Co. v. Federal Communications Comm., 1943, 319 U.S. 239, 63 S.Ct. 1035, 87 L.Ed. 1374, and Ashbacker Radio Co. v. Federal Communications Comm., 1945, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108.

[3] 31 Stat. 1225 (1901), as amended, 41 Stat. 1312 (1921), D.C.Code § 17—101 (1940).