Matter of Leon B. GREENE, Appellant.

No. 1910.

Municipal Court of Appeals for the
District of Columbia.

Argued Jan. 14, 1957.

Decided April 1, 1957.

John A. Shorter, Jr., and James A. Cobb,
Washington, D. C., with whom Perry W.
Howard, Washington, D. C., was on the
brief, for appellant.

Lewis Carroll, Asst. U. S. Atty., with
whom Oliver Gasch, U. S. Atty., and Ken-
neth D. Wood and Nathan J. Paulson, Asst.
U. S. Attys., were on the brief, as amicus
curiae, urged affirmance.

Before ROVER, Chief Judge, and HOOD
and QUINN, Associate Judges.

HOOD, Associate Judge.

Pursuant to statutory authority "to pro-
vide, under reasonable rules and regula-
tions, the qualifications of persons * * *
applying for authority to engage in the
bonding business in criminal cases * * *
and the terms and conditions upon which
such business shall be carried on, * * *" [1]
the trial court Criminal Rule 5, paragraph
13, provides:

"Any bondsman who procures or as-
sists in procuring or attempts to pro-
cure the retention or employment of
any attorney to represent any person

1. Code 1951, Supp. V, § 23–608(a).

charged with an offense cognizable in this court, or solicits or receives or enters into any agreement to receive any fee, commission money, property or other things of value for procuring or assisting or attempting to procure the retention or employment of any attorney to represent any person charged with an offense cognizable in this court, shall be suspended from executing other or further bonds until the further order of this court."

After notice and hearing a three-judge court found that appellant Greene, an agent under power of attorney of Perry W. Howard, Jr., an authorized bondsman, was guilty of infraction of the above-quoted rule, and suspended him from executing bonds for a period of ninety days. Greene has appealed from that order.

The appeal does not attack the reasonableness of the rule, nor does it contend that there was a denial of due process in the proceedings below, but it claims that the finding (1) is not supported by substantial evidence, (2) is against the clear weight of the evidence, and (3) is therefore not supportable as a matter of law. These assertions require a rather extensive discussion of the testimony.

The petition was filed and the charges prosecuted, at the request of the Chief Judge of the trial court, by the United States Attorney. The petition alleged that one Janie Shirley Smith, having been arrested on a charge of petit larceny, was released under a bail bond furnished by Howard, and that on the following day before her appearance in court Greene "requested one Sumler R. Swancy, a registered attorney of this Court, to represent Janie Shirley Smith," and that thereafter Swancy entered his appearance for her. At the close of the hearing, the trial court made no specific finding, but announced: "We have unanimously concluded that the allegations in the petition have been sustained by a preponderance of the evidence." This was followed by a formal order of suspension which recited that "the evidence sustained the charge of infraction of Rule 5, paragraph 13, of the Municipal Court Criminal Rules."

In view of the specific charge in the petition, and in the absence of any specific finding by the trial court, our inquiry must be limited to whether the evidence justified a finding that Greene requested Swancy to represent Janie Shirley Smith.

The following basic facts are not disputed. Janie Shirley Smith, nineteen years of age, hereafter referred to as the daughter, was arrested on a charge of petit larceny. After her arrest her father and Greene went to the Woman's Bureau and Greene secured her release on bond. She was told by Greene that she would have to appear in court the following day at 10:00 o'clock. On the following morning the daughter and her mother went to Howard's office and there talked with Greene. He inquired if the daughter had a lawyer and was told she had none. Shortly before 10:00 o'clock Swancy, whose office was on the floor above Howard's, came down the stairs and passed by the open door of Howard's office. Swancy was accompanied by three clients and was on his way to court, a short distance away. Greene, the daughter and the mother, and perhaps others, followed behind Swancy's group. All went to the criminal division, but Swancy left there and took one client to the civil division. When he returned the mother and daughter were waiting in the hall and they followed him upstairs to the courtroom. Swancy sat down beside the daughter, got her name and told her to plead not guilty. When the case was called Swancy told the judge he did not know whether his services as a lawyer in the case were desired and asked permission to confer with the daughter and mother. His request was granted and after a conference the mother told Swancy she wanted him to represent the daughter if he could help her. Thereafter Swancy entered his appearance for her.

The uncertainty in the evidence relates to what occurred in the bondsman's office after Greene ascertained that the daughter had no lawyer. The mother testified that Greene told her she needed a lawyer and that when Swancy passed by the door Greene said that maybe Swancy could do something for her. Greene testified that the mother asked if he could recommend a lawyer and he refused to do so, and that as Swancy passed the door the mother asked if Swancy was a lawyer and he replied that he was. To some extent Greene's testimony contradicted his own sworn answer in which he had stated that when Swancy passed the door he remarked to the daughter, "There is a lawyer and it may be that he can help you." The daughter testified that Greene said nothing to her about a lawyer, but did ask the mother if she had one and told the mother it was best to have one, and when the mother said she had no money for a lawyer, Greene replied, "Maybe I could help you or see what I can do."

The foregoing evidence would fully warrant a finding that Greene, after learning there was no lawyer in the case, advised the mother and daughter to obtain a lawyer, pointed out Swancy as a lawyer, and suggested that they consult with Swancy. However, nothing in the foregoing would support the charge that Greene requested Swancy to represent the daughter. If support for such charge is in the record, it must be found in the daughter's answer to the question, "How did you happen to get Mr. Swancy to represent you?" She replied that, while she was in the office with Greene, Swancy came down the steps,

"And Mr. Greene was with some more people and Mr. Greene said he had some people who needed help and see what he can do. He said, 'If anybody wants to see me, come along.' We followed him to the courthouse. Mr.

Greene, mother and myself went down to the place to sign the bond. When we came back Mr. Swancy wasn't there. While we were down there he came through the door across the street —said he had been to another building. He said if anyone to see him come upstairs. He didn't have any conversation with us at all."

No attempt was made by counsel to have the witness elaborate on or explain this statement. Our question is whether it supports the charge. Perhaps it may be construed to mean that Greene told Swancy that the daughter needed a lawyer and asked him to represent her. There are, however, certain obstacles to such construction. Who were these "more people" who were with Greene, and did Greene refer to them when he said he had some people who needed help? Where did this conversation take place? Both the daughter and mother denied that Swancy came into Howard's office and neither testified that Greene left the office. Did it take place in the open doorway? If so, why did the mother not hear it and corroborate the daughter's testimony? Aside from the mother's failure to corroborate, which almost amounted to a denial, and the denial by Swancy[2] and Greene that any such conversation took place, one of Swancy's clients, a registered pharmacist, who accompanied him down the stairs and through the hallway, testified that Swancy did not stop to talk to anyone. To support his denial Greene offered the testimony of numerous character witnesses, including lawyers, a newspaperman, and a court official, that his reputation for truth and veracity was excellent

Careful examination of the entire record convinces us that while it presents some very suspicious circumstances it does not furnish sufficient probative evidence to support the charge. License to

---

2. Swancy admitted that as he passed through the hallway he made the statement: "Anybody who wants to see me follow me." His explanation for this was that he was hurrying to get to court and and there were people in the hallway and he thought some of them might be looking for him.

engage in the bonding business once granted becomes a right,[3] and such right ought not to be taken away on the strength of vague, indefinite and uncorroborated testimony.

We may add that it is evident from the record that counsel prosecuting the charges expected to prove a far stronger case than the testimony developed. He was forced to rely on witnesses who perhaps were not too willing. These circumstances may explain the weakness of the case as presented, but they do not add strength to it.

Reversed with instructions to set aside the order of suspension.

3. See The Carter Cases, 85 U.S.App.D.C. 229, 177 F.2d 75, certiorari denied Laws v. Carter, 338 U.S. 900, 70 S.Ct. 250, 94 L.Ed. 554; and 89 U.S.App.D.C. 310, 192 F.2d 15, certiorari denied, 342 U.S. 862, 72 S.Ct. 89, 96 L.Ed. 648.