GARY P. SMITH, d/b/a HOLIDAY HEALTH CLUB, ROBERT THOMPSON
AND PEGGY N. THOMPSON, d/b/a PEGGY'S HEALTH CLUB, JAMES
B. EDGE, d/b/a ROMAN HEALTH CLUB, STEPHEN E. SCOTT, d/b/a
TOUCH OF MAGIC, ON BEHALF OF THEMSELVES AND SUCH OTHER PERSONS,
FIRMS AND CORPORATIONS AS ARE SIMILARLY AFFECTED BY SECTION 17-14.1
AND SECTION 17-12 OF THE CITY CODE OF THE CITY OF FAYETTEVILLE,
NORTH CAROLINA, CONCERNING THE LICENSING OF MASSEURS AND MAS-
SEUSES AND MASSAGE PARLORS AND HEALTH CLUBS IN THE CITY OF
FAYETTEVILLE v. HERVEY KEATOR, ACTING CHIEF OF POLICE OF
THE CITY OF FAYETTEVILLE, NORTH CAROLINA, OTTIS F. JONES,
SHERIFF OF CUMBERLAND COUNTY, NORTH CAROLINA, AND JACK
THOMPSON, DISTRICT ATTORNEY (DISTRICT SOLICITOR) OF THE
TWELFTH JUDICIAL DISTRICT OF THE STATE OF NORTH CAROLINA

No. 82

(Filed 1 July 1974)

1. **Statutes § 4— interpretation of statute in favor of constitutionality**

    Where a statute or ordinance is susceptible to two interpretations
    —one constitutional and one unconstitutional—the court should adopt
    the interpretation resulting in a finding of constitutionality.

2. **Constitutional Law §§ 12, 14; Municipal Corporations § 32— massage
    parlor — regulation by city**

    The operation of a massage parlor is a proper subject for regula-
    tion by a city.

3. **Constitutional Law §§ 12, 14; Municipal Corporations § 32— massage
    parlor ordinance — constitutionality**

    In considering the Fayetteville massage parlor ordinance it is
    proper to infer that after a complaint is filed by the chief of police
    or other interested citizen, and after notice, a licensee is entitled to
    a hearing before the city council, and that the council will not be per-
    mitted to deny the application for a massage license or to revoke the
    same after issuance except upon reasonable grounds; when so con-
    strued, the licensing provisions of the ordinance meet the constitutional
    due process requirements.

4. **Constitutional Law § 20; Municipal Corporations § 32— massage parlor
    ordinance — no sex discrimination**

    Since the prohibition in the Fayetteville massage parlor ordinance
    against massaging members of the opposite sex applies equally to both
    men and women, there is no discrimination whatsoever based on sex;
    furthermore, in light of the inherent character of the subject matter
    and the evil sought to be eliminated—namely, immoral acts likely to
    result from too intimate familiarity of the sexes—the classification is
    reasonable and not arbitrary and has a fair and substantial relation
    to the object of the ordinance.

APPEAL by plaintiffs pursuant to G.S. 7A-30(1) from the
decision of the North Carolina Court of Appeals, reported in

21 N.C. App. 102, 203 S.E. 2d 411 (1974), reversing the judgment of *Braswell, J.*, at the 9 August 1973 Session of CUMBER-LAND Superior Court.

The facts pertinent to this appeal are as follows: On 24 July 1972, for the stated purpose of protecting the general health, safety, welfare and morals of its citizens, the City of Fayetteville adopted Section 17-14.1 of its Code of Ordinances requiring a city license "for the privilege of carrying on the business, trade or profession of masseur or masseuse and for the operation or carrying on of the businesses, trade or professions commonly known as massage parlors, health salons, physical culture studios, clubs or establishments, or similar establishments by whatever name designated, wherein physical culture, massage, hydotherapy or other physical treatment of the human body is carried on or practiced." Each of the plaintiffs in this case was engaged in the business or profession of masseur or masseuse and prior to the institution of this case had been arrested for not obtaining a city license as required by Section 17-14.1.

On 3 August 1973 plaintiffs instituted this action to restrain and enjoin the enforcement of Section 17-14.1 on several grounds, one being that the city ordinance was unconstitutional. Those portions of the ordinance to which plaintiffs pointed as rendering the ordinance unconstitutional are subsections (e), (j), and (l). Subsections (c) and (d) set forth the requirements and procedures for applying for a license under the ordinance. Briefly stated, these subsections require an applicant for a license to furnish to the mayor and city council "written recommendations showing proof of good moral character" and "a health certificate from a medical doctor." Then subsection (e) — one of the three portions of the ordinance complained of and pertinent to this appeal—provides:

"(e) *Issuance of License*. If such application is submitted in proper form and is approved by the city council, then the city tax collector is authorized to issue a business license to such applicant."

The other two portions of the ordinance complained of on this appeal are as follows:

"(j) *Revocation of License*. Whenever, in the opinion of the chief of police of the city, there is good cause to

revoke a license acquired hereunder, he shall submit a written recommendation of revocation, stating the reasons therefor, to the mayor and the city council, and by registered mail shall forward to the licensee a copy of his recommendation. The city council shall thereupon be authorized to revoke such license if in its sound discretion it is deemed in the best interests of the health, safety, welfare or morals of the people of the city.

\*     \*     \*

"(1) *Treatment of Persons of Opposite Sex Restricted.* It shall be unlawful for any person holding a license under this section to treat a person of the opposite sex, except under the signed order of a licensed physician, osteopath, chiropractor, or registered physical therapist, which order shall be dated and shall specifically state the number of treatments, not to exceed ten (10). The date and hour of each treatment given and the name of the operator shall be entered on such order by the establishment where such treatments are given and shall be subject to inspection by the police at any reaasonable time. The requirements of this subsection shall not apply to treatments given in the residence of a patient, the office of a licensed physician, osteopath or registered physical therapist, chiropractor, or in a regularly established and licensed hospital or sanitarium."

Plaintiffs also sought to restrain the enforcement of Section 17-12 of the Code of Ordinances. This section makes it unlawful to commence business without a license when, as in this case, the business is subject to a licensing ordinance. Following a hearing on 3 August 1973, Judge Braswell entered a temporary restraining order enjoining the defendant law enforcement officers from enforcing Sections 17-14.1 and 17-12 of the City Code. Upon the return of the temporary restraining order, a second hearing was conducted before Judge Braswell. Thereafter, on 20 August 1973, Judge Braswell, after noting that injunctive relief was "necessary to protect plaintiffs from irreparable injury to their property rights," entered an order restraining and prohibiting the defendant law enforcement officers from enforcing or attempting to enforce Sections 17-14.1 and 17-12 of the Code of Ordinances of the City of Fayetteville. In the same judgment Judge Braswell also ruled that Section 17-14.1 and the part of Section 17-12 dealing with massage parlors were invalid and

Smith v. Keator

void, because, among other reasons, such ordinances were unconstitutional.

In his conclusions of law dealing with the constitutionality of Section 17-14.1, Judge Braswell noted that subsections (e) and (j) were unconstitutional in that they gave the chief of police and the city council the right to determine arbitrarily what is good for the public welfare, safety, health, and morals, guided only by their own ideas and not by narrow, objective, and definite standards. Furthermore, he noted, no procedure for a hearing is provided by the ordinance for one who stood to have his license revoked, and to allow the chief of police and the city council, without guidelines or standards, to revoke a license without a hearing was a violation of the due process clause.

In his conclusions of law dealing with subsection (l), Judge Braswell quoted with approval the following language from *J.S.K. Enterprises, Inc. v. City of Lacey,* 6 Wash. App. 43, 56, 492 P. 2d 600, 607 (1971) : "Because it prohibits all massagists, not licensed under one of the other healing arts, from performing massages upon the opposite sex, without a reasonable basis for such a mandate, it constitutes discrimination on the basis of sex in contravention of the equal protection clause of the fourteenth amendment to the United States Constitution."

From the judgment entered, defendants appealed to the North Carolina Court of Appeals. That court, in an opinion by Judge Baley, reversed the judgment entered by Judge Braswell. We denied *certiorari* but plaintiffs appealed to this Court pursuant to G.S. 7A-30 (1).

*Butler, High & Baer; Christine Y. Denson for plaintiff appellants.*

*Nance, Collier, Singleton, Kirkman & Herndon by Rudolph G. Singleton, Jr., and Ocie F. Murray, Jr.; Clark, Clark, Shaw & Clark by Heman R. Clark for defendant appellees.*

MOORE, Justice.

The only question before us on this appeal is the constitutionality of the ordinance in question. Plaintiffs contend that the ordinance is invalid because it violates the due process and equal protection clauses of the United States Constitution.

Plaintiffs first assert that the ordinance violates the due process clause of the Fourteenth Amendment by permitting the

city council to act arbitrarily in denying or revoking massage parlor licenses. Plaintiffs have not applied for a license, so the question of a denial or revocation has not been before the city council. Instead, plaintiffs seek a judgment declaring Section 17-14.1 of the City Code of Fayetteville unconstitutional.

The following statutes are pertinent to the authority which cities have to regulate and license occupations, trades, professions, and businesses.

G.S. 160A-194 in part provides:

"A city may by ordinance, subject to the general law of the State, regulate and license occupations, businesses, trades, professions, and forms of amusement or entertainment and prohibit those that may be inimical to the public health, welfare, safety, order, or convenience. . . . "

G.S. 160A-174 in part provides:

"(a) A city may by ordinance define, prohibit, regulate, or abate acts, omissions, or conditions, detrimental to the health, safety, or welfare of its citizens and the peace and dignity of the city, and may define and abate nuisances."

G.S. 160A-4 provides that in construing ordinances:

"It is the policy of the General Assembly that the cities of this State should have adequate authority to execute the powers, duties, privileges, and immunities conferred upon them by law. To this end, the provisions of this Chapter and of city charters shall be broadly construed and grants of power shall be construed to include any additional and supplementary powers that are reasonably necessary or expedient to carry them into execution and effect. . . . "

[1] At the threshold of our consideration of the questions here presented we note the well-recognized rule that where a statute or ordinance is susceptible to two interpretations—one constitutional and one unconstitutional—the Court should adopt the interpretation resulting in a finding of constitutionality. *State v. Frinks,* 284 N.C. 472, 201 S.E. 2d 858 (1974) ; *Randleman v. Hinshaw,* 267 N.C. 136, 147 S.E. 2d 902 (1966) ; *Finance Co. v. Leonard,* 263 N.C. 167, 139 S.E. 2d 356 (1964). And when the legislative body undertakes to regulate a business, trade, or profession, courts assume it acted within its powers until the contrary clearly appears. *Mitchell v. Financing Authority,* 273

N.C. 137, 159 S.E. 2d 745 (1968) ; *Roller v. Allen,* 245 N.C. 516, 96 S.E. 2d 851 (1957).

[2] In *Cheek v. City of Charlotte,* 273 N.C. 293, 160 S.E. 2d 18 (1968), this Court held that a city could regulate the operation of massage parlors. Justice Sharp, speaking for the Court, stated: "We hold that the occupation of a massagist and the business of massage parlors and similar establishments are proper subjects for regulation under the police power of the City of Charlotte." The Charlotte ordinance had the same provisions as those of the Fayetteville ordinance, except the Charlotte ordinance contained a provision exempting barbershops, beauty shops, and the health club activities of the YMCA and YWCA from its application. This Court held that there was no reasonable ground for those exemptions, and for that reason the ordinance was invalid. This unconstitutional feature is not found in the Fayetteville ordinance.

[3] Plaintiffs contend, however, that subsections (e) and (j) give the city council unlimited discretion to deny any application for a license or revoke any license already issued without a hearing. Under the due process clause, a city may not deny or revoke an occupational license arbitrarily or without notice and a hearing. As was stated in *State v. Parrish,* 254 N.C. 301, 118 S.E. 2d 786 (1961) :

> "A license to engage in business or practice a profession is a property right that cannot be taken away without due process of law. The granting of such license is a right conferred by administrative act, but the deprivation of the right is a judicial act requiring due process. *Boyce v. Gastonia,* 227 N.C. 139, 41 S.E. 2d 355; *In re Carter,* 195 F. 2d 15 (D.C. 1951), cert. den. 342 U.S. 862; *In re Carter,* 177 F. 2d 75 (D.C. 1949), cert. den. 338 U.S. 900; *Laisne v. Board of Optometry,* 101 P. 2d 787 (Cal. 1940) ; *In re Greene,* 130 A. 2d 593 (D.C. 1957)."

Under Article I, Section 19, of the North Carolina Constitution, no person can be deprived of his property except by his own consent or the law of the land. The law of the land and due process of law are interchangeable terms and both import notice and an opportunity to be heard or defend in a regular proceeding before a competent tribunal. *Hagins v. Redevelopment Comm.,* 275 N.C. 90, 165 S.E. 2d 490 (1969) ; *Eason v. Spence,* 232 N.C. 579, 61 S.E. 2d 717 (1950) ; *Willner v. Com-*

*mittee on Character & Fitness,* 373 U.S. 96, 10 L.Ed. 2d 224, 83 S.Ct. 1175 (1963).

Justice Branch in *State v. Frinks, supra,* at 484, 201 S.E. 2d at 866, stated:

> " . . . [I]t should be borne in mind that in construing this ordinance we may draw reasonable inferences and consider proper implications to the end that the ordinance may be declared valid. In so doing, we are guided by the rule that when a duty is imposed upon a public agency there arises, of necessity, an implication that adequate power is bestowed upon the agency to perform the duty in accord with the federal and state constitutions. *Hill v. Lenoir County,* 176 N.C. 572, 97 S.E. 498; *Lowery v. School Trustees,* 140 N.C. 33, 52 S.E. 267."

See *Cox v. New Hampshire,* 312 U.S. 569, 10 L.Ed. 1049, 61 S.Ct. 762 (1941).

We approve and adopt the construction of the Fayetteville ordinance stated by our Court of Appeals as follows:

> " . . . The ordinance can be construed so as to avoid constitutional deficiencies. See Education Assistance *Authority v. Bank,* 276 N.C. 576, 174 S.E. 2d 551; *Milk Commission v. Food Stores,* 270 N.C. 323, 154 S.E. 2d 548. Subsection (j) should be construed to allow a licensee to appear before the city council and present his case before his license can be revoked. The subsection expressly provides that a licensee must be notified by registered mail whenever there is a proposal to revoke his license, and this notice procedure would be of no use if the licensee were not allowed to come before the council for a hearing. Subsection (e), likewise, should be interpreted in a manner that will satisfy the requirements of the due process clause; the city council should not be permitted to deny an application for a massage license except upon reasonable grounds, and after notice and a hearing. When interpreted in this way, the licensing provisions of the ordinance are entirely constitutional."

We consider it proper to infer, as did our Court of Appeals, that after a complaint is filed by the chief of police or other interested citizen, and after notice, the licensee would be entitled to a hearing before the city council, and that the council would

not be permitted to deny the application for a massage license or to revoke the same after issuance except upon reasonable grounds.

Plaintiffs' second contention is that subsection (1) of the massage parlor ordinance creates "an invidious and irrational classification based on sex." In *Cheek v. City of Charlotte, supra,* this Court upheld that part of a similar city ordinance forbidding massagists to treat persons of the opposite sex, and quoted with approval from Ex Parte Maki, 56 Cal. App. 2d 635, 133 P. 2d 64 (1943), as follows:

"The ordinance applies alike to both men and women. . . . The barrier erected by the ordinance against immoral acts likely to result from too intimate familiarity of the sexes is no more than a reasonable regulation imposed by the city council in the fair exercise of police powers. . . .

*       *       *

"There is nothing in the ordinance that denies the equal protection guaranteed by the Fourteenth Amendment. It applies to all alike who give massages for hire and who are not licensed to practice one of the arts of healing. . . ."

See Tussman and tenBroek, *The Equal Protection of the Laws,* 37 Calif. L. Rev. 341, 343-47 (1949).

In *Patterson v. City of Dallas,* 355 S.W. 2d 838 (Tex. Civ. App. 1962), the Texas Court, after noting that the California case of Ex Parte Maki, supra, was so well decided that it was decisive of the appeal before them, held that a city ordinance declaring that it was unlawful to administer a massage to any person of the opposite sex was a fair exercise of the police power of the city that did not violate any constitutional rights of the licensees of the massage establishment. The Court stated that the ordinance bore a reasonable relation to the objects sought to be obtained, and that the ordinance was valid and constitutional. This case was appealed to the Supreme Court of the United States. That Court in a *per curiam* opinion dismissed the appeal stating, "The motion to dismiss is granted and the appeal is dismissed for want of a substantial federal question." 372 U.S. 251, 9 L.Ed. 2d 732, 83 S.Ct. 873 (1963).

Relying on and quoting extensively with approval from Ex Parte Maki, supra, the Supreme Court of Virginia in *Kisley v. City of Falls Church,* 212 Va. 693, 187 S.E. 2d 168 (1972),

held that ordinances regulating the operation of health clubs, massage salons, bath parlors, and similar establishments, and making it unlawful to operate a massage salon, bath parlor, or any similar type of business, where the service rendered to a customer was by a person of the opposite sex, were not unconstitutional as depriving the complainants of property rights without due process of law, or as denying them and their employees equal protection of the law. On appeal to the United States Supreme Court, the appeal was "dismissed for want of substantial federal question." 409 U.S. 907, 34 L.Ed. 2d 169, 93 S.Ct. 237 (1972). See also *Connell v. State,* 371 S.W. 2d 45 (Tex. Crim. App. 1963) ; *City of Houston v. Shober,* 362 S.W. 2d 886 (Tex. Civ. App. 1962) ; Annot., 51 A.L.R. 3d 936 (1973).

Despite the above discussed cases, plaintiffs contend that "though at one time it might have been said that discrimination based upon sex did not give rise to equal protection violations, this is certainly not the case today." Specifically, plaintiffs assert that in a recent case, *Reed v. Reed,* 404 U.S. 71, 30 L.Ed. 2d 225, 92 S.Ct. 251 (1971), the United States Supreme Court held for the first time that classifications that discriminate on the basis of sex are violative of the equal protection clause.

Prior to *Reed v. Reed,* the United States Supreme Court had consistently upheld the constitutionality of statutes applying differently to the different sexes under the "reasonable classification" or "rational basis" test. See *Hoyt v. Florida,* 368 U.S. 57, 7 L.Ed. 2d 118, 82 S.Ct. 159 (1961) ; *Goesaert v. Cleary,* 335 U.S. 464, 93 L.Ed. 163, 69 S.Ct. 198 (1948) ; *West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 81 L.Ed. 703, 57 S.Ct. 578 (1937) ; *Muller v. Oregon,* 208 U.S. 412, 52 L.Ed. 551, 28 S.Ct. 324 (1908). For a general discussion of the reasonable basis test under the equal protection clause, see *Developments in the Law—Equal Protection,* 82 Harv. L. Rev. 1065, 1077-87 (1969).

In *Reed v. Reed* the United States Supreme Court reviewed an Idaho statute that provided a mandatory preference for males over females in selecting estate administrators within a given class of qualified persons. Although the Court invalidated the statute on the ground that it denied equal protection to women, this holding was based on the Court's determination that the statute lacked a rational basis. The Court did not hold that sex discrimination should be closely scrutinized for equal protection purposes as a suspect classification, thereby requiring the State to show it is necessary to promote a compelling

governmental interest. See *Dunn v. Blumstein,* 405 U.S. 330, 337-42, 31 L.Ed. 2d 274, 281-84, 92 S.Ct. 995, 1000-03 (1972) ; *McLaughlin v. Florida,* 379 U.S. 184, 191-92, 196, 13 L.Ed. 2d 222, 228, 231, 85 S.Ct. 283, 288, 290-91 (1964). To the contrary, it is apparent from the language used that the Court intended to continue passing on sexual classifications under the traditional equal protection test:

> "In applying [the equal protection] clause, this Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. [Citations omitted.] The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' *Royster Guano Co. v. Virginia,* 253 U.S. 412, 415 (1920)."

In a 1973 case, *Frontiero v. Richardson,* 411 U.S. 677, 36 L.Ed. 2d 583, 93 S.Ct. 1764 (1973), the Supreme Court considered federal statutes providing that a married female member of the armed services could receive increased housing assistance and obtain for her husband medical and dental care equivalent to that afforded members of the uniformed services only if she demonstrated that she was the source of funds for more than half of her husband's living expenses; a married serviceman, however, could obtain these benefits regardless of whether he provided funds for more than half of his wife's living expenses. Although the Court found this different treatment of servicemen and servicewomen unconstitutional and invalidated the statutes insofar as they withheld benefits from married servicewomen and their spouses who could not show that they met the dependency requirement, there was no majority opinion in the case. While a majority on the Court favored ruling that the challenged statutes constituted an unconstitutional discrimination against servicewomen, a majority of the Court was unwilling to find sex an inherently suspect classification requiring close judicial scrutiny.

In a case handed down on 24 April 1974, the Supreme Court shed further light on these two earlier holdings. In that case, *Kahn v. Shevin,* ____ U.S. ____, 40 L.Ed. 2d 189, 94 S.Ct. 1734 (1974), the appellant, a widower, contended that a Florida statute violated the equal protection clause in that it granted widows an annual $500 property tax exemption but did not offer an analogous benefit for widowers. The Florida Supreme Court, in rejecting the appellant's contention that the statute was violative of the equal protection clause because the classification "widow" was based upon gender, held that the classification was valid under *Reed v. Reed* because it had a "fair and substantial relation to the object of the legislation," that object being the reduction of "the disparity between the economic capabilities of a man and a woman." The United States Supreme Court affirmed, noting that under the authority of *Reed v. Reed* there can be no doubt "that Florida's differing treatment of widows and widowers 'rest[s] upon some ground of difference having a fair and substantial relation to the object of the legislation.'" Furthermore, the Court stated, "[t]his is not a case like *Frontiero v. Richardson,* 411 U.S. 677, where the Government denied its female employees both substantive and procedural benefits granted males '*solely* for administrative convenience.' Id., at 690." In concluding the Court stated: "A state tax law is not arbitrary although it 'discriminate[s] in favor of a certain class . . . if the discrimination is founded upon a reasonable distinction, or difference in state policy,' not in conflict with the Federal Constitution. . . . The statute before us is well within those limits."

Unlike the factual situations presented in *Reed v. Reed,* and *Frontiero v. Richardson* wherein females were treated differently from males similarly situated, in the present case neither males nor females are treated differently from other males or females similarly situated. As stated in *Cheek v. City of Charlotte, supra:*

> " ' "Class legislation" is not offensive to the Constitution when the classification is based on a reasonable distinction and the law is made to apply uniformly to all the members of the class affected. Or, as the principle is more often expressed, when the law applies uniformly to all persons in like situation,—which of itself implies that the classification must have a reasonable basis, without arbitrary discrimination between those in like situation.' *State*

*v. Glidden Co., supra* [228 N.C. 664, 666, 46 S.E. 2d 860, 862]. *Accord, Motley v. Board of Barber Examiners,* 228 N.C. 337, 45 S.E. 2d 550."

[4] Since the prohibition against massaging members of the opposite sex applies equally to both men and women, we fail to discern any discrimination whatsoever based on sex. Admittedly, if the ordinance provided that male massagists could massage female patrons but that females could not massage males, a different situation would be presented. However, this is not the case under the ordinance in question. Furthermore, in light of the inherent character of the subject matter and the evil sought to be eliminated—namely, immoral acts likely to result from too intimate familiarity of the sexes—we hold the classification is reasonable and not arbitrary and has a fair and substantial relation to the object of the ordinance.

For the reasons stated, the decision of the Court of Appeals is affirmed.

Affirmed.