ROBERT E. MYERS, RALEIGH, NORTH CAROLINA, SALES REPRESENTATIVE
OF HIRAM WALKER, INC., NORTH CAROLINA BOARD OF ALCOHOLIC
CONTROL PERMIT NO. 38, PETITIONER v. DR. L. C. HOLSHOUSER,
MARCUS T. HICKMAN, ESQUIRE, AND GEORGE L. COXHEAD,
MEMBERS OF THE NORTH CAROLINA BOARD OF ALCOHOLIC
CONTROL AND THE NORTH CAROLINA BOARD OF ALCOHOLIC
CONTROL, RESPONDENTS

No. 7510SC52

(Filed 21 May 1975)

1. Intoxicating Liquor § 2; Administrative Law § 4— ABC Board — compelling production of records — absence of probable cause

   The Board of Alcoholic Control may require the holder of a distillery representative's permit to produce relevant business books and records without abridging his Fourth Amendment rights even though the Board lacks traditional probable cause. G.S. 18A-15(12).

2. Intoxicating Liquor § 2; Administrative Law § 4— ABC Board — compelling production of records — absence of evidence of rule violation

   The Board of Alcoholic Control was not required to have evidence that the holder of a distillery representative's permit had violated its rules and regulations before it undertook an investigation of him and required him to produce books and records pertaining to promotional activities in this State for a distillery.

3. Administrative Law § 4— administrative agency — compelling production of records

   An administrative agency may require the production of documents only when its investigation is authorized by law and conducted pursuant to a legitimate purpose, the information sought is relevant to a lawful subject of investigation, and the demand for production is reasonable and specific in directive so that. compliance is not unreasonably burdensome.

4. Intoxicating Liquor § 2; Administrative Law § 4— production of records — sufficiency of order

   Order of the Board of Alcoholic Control requiring the holder of a distillery representative's permit to produce all books and records pertaining to his promotional activities in this State for a distillery was not so overbroad as to be impermissibly burdensome.

5. Intoxicating Liquor § 2; Administrative Law § 4— denial or revocation of permit — due process — notice and hearing

   The Board of Alcoholic Control must give notice and an opportunity to be heard to an applicant or permittee before it can refuse or revoke a permit for failure to produce records as ordered by the Board pursuant to G.S. 18A-15(12).

6. **Intoxicating Liquor § 2; Administrative Law § 5— refusal to renew permit — declaratory judgment — authority of superior court — due process hearing**

In a declaratory judgment action instituted after the Board of Alcoholic Control refused to renew petitioner's permit to operate as a distillery representative when petitioner failed to produce certain business records as ordered by the Board, the superior court had no authority to order the Board to issue a permit to petitioner but was limited to a declaration that petitioner is entitled to a due process hearing before the Board before action is taken to revoke or deny renewal of his permit.

APPEAL by respondents from *Bailey, Judge.* Judgment entered 20 November 1974 in Superior Court, WAKE County. Heard in the Court of Appeals 20 March 1975.

Petitioner is the holder of a permit to operate as a distillery representative in North Carolina for Hiram Walker, Inc. Respondents are the North Carolina Board of Alcoholic Control (Board) and its individual members who are responsible for granting permits to persons operating as distillery representatives in North Carolina. This action was instituted because of an order of the Board, made on 19 February 1974 pursuant to G.S. 18A-15 (12), for petitioner to produce his business records for the calendar years 1968 through 1972 as they related either to petitioner's or to Hiram Walker's promotional activities in North Carolina. Respondents required compliance with the order as a condition precedent to renewal of petitioner's permit for 1974-1975. In this action petitioner sought both (1) a declaratory judgment that the actions of the Board in requesting the records were unconstitutional and (2) a mandatory injunction requiring the issuance of a distillery permit to operate through 28 February 1975. Specifically petitioner contended that the actions of the Board pursuant to G.S. 18A-15 (12) were unconstitutional, that its request was overbroad, that its action deprived him of a property right without due process of law, and that its action was arbitrary and capricious. The superior court granted the relief sought by petitioner, and respondents appealed. The appeal raises the following issues for our resolution: whether an administrative agency has investigatory powers; whether the Board could request the production of books and records even when it lacked "traditional" probable cause; whether its request was so overbroad as to be impermissibility burdensome; and whether petitioner was deprived of due process of law in the failure to renew his permit without a hearing.

Myers v. Holshouser

A controversy between the parties first arose on 19 February 1973 when the Attorney General of North Carolina filed a petition with the Board in which he asked for the Board's assistance in completing an investigation by the North Carolina Department of Justice of the purchase, sale, and transportation of liquor in North Carolina. Paragraph six of the petition asked that the Board obtain the business records relating to promotional activities of petitioner. These records had already been requested by the State Bureau of Investigation, but its request had been denied by counsel for petitioner. Respondent Board, by its chairman, respondent L. C. Holshouser, notified petitioner on 19 February 1973 by telegram and letter that he should appear before the Board "to show just cause as to why action should not be taken by the State ABC Board in order to comply with the requests of the Attorney General."

Petitioner appeared before the Board on 26 February 1973. On 5 March 1973 the Board ordered that petitioner furnish

"[A]ll business records, including expense accounts and/or other records showing business expenses incurred, canceled checks (of the Permittee), receipts, invoices and vouchers relating to any and all promotional activities of the Permittee and/or promotional activities on behalf of Hiram Walker, Incorporated, in North Carolina for the period January 1, 1968, to and including December 31, 1972, which promotional activities shall include but shall not be restricted to entertainment, gifts of money or property, political contributions (in cash or in property), either directly or indirectly, where the contribution was intended to benefit a particular candidate, committee or party, irrespective of to whom made, given or delivered."

Petitioner sought judicial review of the Board's order, pursuant to Chapter 143 of the North Carolina General Statutes, and a hearing in superior court was held. The court subsequently entered an order on 4 April 1973 finding that substantial rights of the petitioner had been abridged and adjudicating the Board's order "null and void and of no effect."

Again on 15 May 1973 the Board ordered petitioner to furnish the information requested in the 5 March 1973 order. Petitioner moved for judicial review, and a hearing was held. On 8 June 1973 the superior court entered an order declaring respondents' 15 May order "null, void, and of no effect."

This appeal is taken from the third attempt of the Board to compel production of petitioner's books and records. On 19 February 1974 the respondents ordered petitioner to produce his business records. Although the request itself was identical in scope to the request of 5 March 1973, this latter order was not issued in support of the request by the Attorney General. The Board's order also contained the following:

"Mr. William G. Aycock has indicated to this office that during the period he was employed by Hiram Walker under your direct supervision, 'that he was instructed to work clubs and turn over to you sums of money for improper promotional activities. This would clearly constitute a violation of North Carolina Laws and the rules and regulations of the North Carolina ABC Board.

. . . .

"If these documents are not produced, your 1974-75 Distillery Representative's permit will not be issued."

Petitioner instituted this independent action on 1 March 1974 for relief in the form of a declaratory judgment and a mandatory injunction compelling the Board to issue a permit for 1974-1975 to petitioner. An *ex parte* order was entered on 1 March 1974 requiring respondents to issue the permit and providing that the order itself would serve as a permit. Respondents answered, and a deposition of L. C. Holshouser, chairman of the Board, and an affidavit of petitioner were introduced. On 20 November 1974 the court again granted the relief sought by the petitioner. The court found as a fact that the Board's request was based solely on a conversation between William G. Aycock and Holshouser. The court further found that allegations of a very general nature had been made against petitioner by Aycock and that the Board had no other information concerning petitioner's activities. The court concluded that the 19 February 1974 order of the Board denied petitioner due process of law; that its actions deprived him of a property right without due process; that the Board's attempt to investigate pursuant to G.S. 18A-15(12) was unconstitutional; and that the Board acted arbitrarily and without competent evidence of wrongdoing on the part of petitioner. The court again ordered the Board to issue a permit to petitioner; in the event that it did not do so, the court's judgment purported to authorize petitioner to operate as a representative.

Respondents appeal from this judgment. Accordingly, we will not be concerned with whether the first two orders of the Board deprived petitioner of due process of law; we deem the 20 November judgment and the circumstances surrounding it the subject of this appeal.

Other facts necessary for the resolution of this appeal are set forth in the opinion.

*Ragsdale and Liggett, by George R. Ragsdale and James C. Ray, for petitioner-appellee.*

*Attorney General Edmisten, by Associate Attorney James Wallace, Jr., for respondents-appellant.*

BROCK, Chief Judge.

[1] We are confronted, at the outset, with a determination of the scope of the investigatory powers of the North Carolina Board of Alcoholic Control: may the Board, even if it has no probable cause, require petitioner to produce relevant business books and records without abridging his constitutional rights under the Fourth Amendment? We conclude that it may.

The Twenty-First Amendment to the United States Constitution grants to the states the right "to legislate concerning intoxicants brought from without the state for use or sale therein, unfettered by the commerce clause." 45 Am. Jur. 2d *Intoxicating Liquors* § 42 (1969). Because of the Twenty-First Amendment and the effect of liquor on the health and welfare of the people, states have broad powers to regulate intoxicants. However, the power to regulate is subject to the United States Constitution and cannot transcend its bounds.

Administrative investigating power is essential not only for law enforcement but also for adjudication, rule-making, and supervision. "There is a peculiar need for an administrative body to provide close surveillance and regulation of the liquor industry because of the numerous and complex problems that arise and the inability of the legislature to anticipate specific problems and to maintain effective continuing supervision." 45 Am. Jur. 2d *Intoxicating Liquors* § 26 (1969). Hence, statutes establishing administrative agencies, both state and federal, necessarily confer broad investigatory powers.

North Carolina General Statute 18A-15(12) provides:

"The State Board of Alcoholic Control shall have power and authority as follows:

"(12) To grant, to refuse to grant, or to revoke permits for any person, firm, or corporation to do business in North Carolina in selling alcoholic beverages to or for the use of any county or municipal store and to provide and to require that such information be furnished by such person, firm, or corporation as a condition precedent to the granting of such permit, or permits, and to require the furnishing of such data and information as it may desire during the life of such permit, or permits, and for the purpose of determining whether such permit, or permits, shall be continued, revoked, or regranted after expiration dates. No permit, however, shall be granted by the State Board to any person, firm, or corporation when the State Board has reason sufficient unto itself to belive that such person, firm, or corporation has furnished to it any false or inaccurate information or is not fully, frankly, and honestly cooperating with the State Board and the several county and municipal boards in observing and performing all liquor laws that may now or hereafter be in force in this State, or whenever the Board shall be of opinion that such permit ought not to be granted or continued for any cause. Upon the granting of a permit in accordance with this Chapter, the State Board of Alcoholic Control shall notify the county sheriff and county tax collector, and if applicable, the city chief of police and city tax collector, as well as the county alcoholic beverage control officer, whenever an alcoholic beverage control permit of any type is issued within the respective county and/or city;

. . . .

"The State Board shall have all other powers which may be reasonably implied from the granting of express powers herein named, together with such other powers as may be incidental to, or convenient for, carrying out and performing the powers and duties herein given to the Board."

A primary reason advanced by petitioner for denying the Board access to books and records stems from the fear that such access would permit fishing expeditions into private affairs. In *Federal Trade Commission v. American Tobacco Company*, 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696 (1924), Justice Holmes, speaking for a unanimous court, stated:

> "Anyone who respects the spirit as well as the letter of the 4th Amendment would be loathe to believe that Congress intended to authorize one of its subordinate agencies to sweep all our traditions into the fire . . . , and to direct fishing expeditions into private papers on the possibility that they may disclose evidence of crime." 264 U.S. at 305-306.

This position, however, has been eroded by a long line of decisions expanding the scope of an administrative agency's investigatory powers. *See* Davis, *The Administrative Power of Investigation*, 56 Yale L.J. 1111 (1947). In *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946), a subpoena *duces tecum* was issued by the Administrator of the Fair Labor Standards Act. It required the production of

> "[a]ll of your books, papers and documents showing the hours worked by and wages paid to each of your employees between October 28, 1938, and the date hereof [November 3, 1943], including all payroll ledgers, time sheets, time cards and time clock records, and all your books, papers and documents showing the distribution of papers outside the State of Oklahoma, the dissemination of news outside the State of Oklahoma, the source and receipt of news from outside the State of Oklahoma, and the source and receipt of advertisements of nationally advertised goods." 327 U.S. at 210 n. 46.

The Court rejected the argument that administrative investigations involved unreasonable search and seizure in violation of the Fourth Amendment. Without attempting to sumarize or accurately distinguish all the cases, the Court stated that the fair distillation, as applied to the production of corporate records and papers in response to a subpoena or order authorized by law and safeguarded by judicial sanction, was that

> "the Fourth [Amendment], if applicable, at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described,'

if also the inquiry is one the demanding agency is author-
ized by law to make and the materials specified are relevant.
The gist of the protection is in the requirement, expressed
in terms, that the disclosure sought shall not be unreason-
able." 327 U.S. at 208.

[1]    The holding in *Oklahoma Press* was buttressed by language
in *United States v. Morton Salt Co.,* 338 U.S. 632, 70 S.Ct. 357,
94 L.Ed. 401 (1950) :

> "The respondents argue that since the Commission made
> no charge of violation either of the decree or the statute,
> it is engaged in a mere 'fishing expedition' to see if it can
> turn up evidence of guilt. We will assume for the argument
> that this is so.
>
> "We must not disguise the fact that sometimes, . . . the
> courts were persuaded to engraft judicial limitations upon
> the administrative process. The courts could not go fishing,
> and so it followed neither could anyone else. Administrative
> investigations fell before the colorful and nostalgic slogan
> 'no fishing expeditons.' It must not be forgotten that the
> administrative process and its agencies are relative new-
> comers in the field of law and that it has taken and will
> continue to take experience and trial and error to fit this
> process into our system of judicature. More recent views
> have been more tolerant of it than those which underlay
> many older decisions." (Citations omitted.) 338 U.S. at
> 641-642.
>
>      .    .    .    .
>
> "Even if one were to regard the request for information in
> this case as caused by nothing more than official curiosity,
> nevertheless law-enforcing agencies have a legitimate right
> to satisfy themselves that corporate behavior is consistent
> with the law and the public interest." *Id.* at 652.

However, the Court did not completely abandon its position
against fishing expeditions, and emphasized that "a govern-
mental investigation into corporate matters may be of such a
sweeping nature and so unrelated to the matter properly under
inquiry as to exceed the investigatory power." *Id.* More recent
decisions have been very liberal in expanding an administra-
tive agency's investigatory powers, even to the extent of sanc-
tioning a warrantless administrative inspection of a locked gun

storeroom under 18 U.S.C. § 923 (g) of the Federal Gun Control Act of 1968, *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed. 2d 87 (1972), and a third party "John Doe" summons issued by the Internal Revenue Service to a bank to discover the identity of a person who had bank transactions suggesting the possibility of liability for unpaid taxes. *United States v. Bisceglia,* 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed. 2d 88 (1975). *Cf. Camara v. Muncipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed. 2d 930 (1967) ; *See v. Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed. 2d 943 (1967) ; *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed. 2d 60 (1970). These cases lead us to the ineluctable conclusion that an administrative agency, in this case the Board of Alcoholic Control, is empowered to conduct inquiries to whatever extent is reasonably necessary to make the power of investigation effective. *See* Davis, Administrative Law Text, *Investigation* § 3.02 (3rd ed. 1972).

A second reason advanced by petitioner for denying the Board the right to compel production of his books and records stems from his belief that (1) the Board had no reason to believe he had violated the law when it requested the documents, and (2) its request for the production of the documents was so overbroad as to be impermissibly burdensome.

**[2]** In *United States v. Morton Salt Co., supra,* the Court made it clear that the Federal Trade Commission had

> "a power of inquisition . . . not derived from the judicial function [but] more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, *or even just because it wants assurance that it is not.* When invesigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law. 338 U.S. at 642-643. (Emphasis added.)

In our opinion the Board of Alcoholic Control was not required to have evidence that petitioner had violated its rules and regulations before it undertook an investigation of him. The Board is not bound by traditional probable cause. The purpose of an administrative investigation is to protect the public; therefore, the public's interest in applying more relaxed criteria for administrative investigations is greater than the regulated person,

firm, or corporation's right to privacy. *See* Note, 58 Geo. L.J. 345, 363 n. 93 (1969). The Board could not perform its duty and determine whether its rules and regulations were being violated if it first had to establish a probable violation as a condition precedent to an investigation. Such a requirement would render the Board's enforcement provisions nugatory.

[3]   An order to produce documents is subject, however, to certain bounds. The investigation must be authorized by law and conducted pursuant to a legitimate purpose, *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed. 2d 112 (1964) ; the information sought must be relevant to a lawful subject of investigation, *United States v. Powell, supra;* the investigative demand must be reasonable and specific in directive so that compliance is not unreasonably burdensome. *See v. Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed. 2d 943 (1967). *See also United States v. Morton Salt Co., supra* 338 U.S. at 651-652. The practical effect of these requirements is that requests for records will be denied only where they are either extreme, vague, or oppressive, or irrelevant. We hold that the Board's request meets none of these objections. It fully satisfies the tests set forth above.

[4]   In reaching the conclusion that the Board can compel petitioner to produce his books and records, we have relied on cases in which subpoenas were issued by administrative agencies for certain documents. The Administrative Procedure Act of North Carolina, set forth in Chapter 150A of the General Statues, empowers agencies to issue subpoenas upon their own motions or upon written request. G.S. 150A-27. That Act becomes effective 1 July 1975. N. C. Session Laws 1973, c. 1331, § 4. However, we do not deem harmful the absence of a subpoena in this case. One of the purposes of a subpoena *duces tecum* is to insure that documents are described with sufficient particularity and. with such definiteness that they can be identified without prolonged or extensive search. *Vaughan v. Broadfoot,* 267 N.C. 691, 149 S.E. 2d 37 (1966). G.S. 18A-55 requires the keeping of accurate records and grants to the Board the right to inspect those records. The order of the Board is sufficiently particular and definite to satisfy the requirement of a subpoena, and the court's conclusion that the order is "so broad as to be unduly burdensome to the petitioner resulting in a substantial denial of his constitutional rights" is error.

In our opinion the Board of Alcoholic Control can conduct, without traditional probable cause, an investigation of petition-

er's books and records pertaining to promotional activities in North Carolina for Hiram Walker, Inc. All conclusions of law of the superior court contrary to this are overruled.

Having so concluded, we are left to resolve two issues: whether the refusal of the Board to renew the permit, without a hearing, upon petitioner's refusal to produce his records, deprived petitioner of due process of law, and whether the superior court should have ordered the Board to issue a permit to petitioner.

When petitioner failed to produce his records for respondents' inspection, the Board of Alcoholic Control refused to renew petitioner's permit to operate as a distillery representative. In its declaratory judgment of 20 November 1974, the court found as a fact that the "ABC Board at no time granted, offered to grant or held a hearing in connection with the issuance of its order of February 19, 1974, amounting to a refusal to renew or reissue the permit of Robert Myers." Respondents have not taken exception to this finding of fact. After receiving notification that his permit would not be renewed if he did not comply with the Board's order, petitioner applied to the superior court for a mandatory injunction compelling the Board to issue petitioner a permit. On 1 March 1974 the court granted petitioner the remedy he sought and ordered the Board to issue a permit. The Board complied with the order and issued a permit to operate as a distillery representative until 28 February 1975. On 20 November 1974 the court entered a declaratory judgment in which it again commanded the Board to issue a permit. In the event the Board did not do so, the judgment authorized petitioner "to conduct such business affairs as he was authorized to conduct under Distillery Representative's permit # 38 of March 1, 1973."

Petitioner worked as a distillery representative until the license issued pursuant to the 1 March 1974 court order expired on 28 February 1975. Petitioner did not expect to have his license renewed beyond that date, but the Board did issue another permit licensing petitioner as a distillery representative until 28 February 1976. In a motion filed with this Court, respondents assert that the issuance of the last permit was the result of clerical error. The Board states that it has no plans to revoke the permit, even though it was issued by mistake. Petitioner also filed a motion with this Court, asserting that the action of the Board has "disposed of" the subject matter of this appeal and urging us to find that this controversy has become moot. Against

this background, we now turn to the two remaining issues raised by this appeal.

The prevailing view among the states is that "a license to sell intoxicating liquor is not property in any constitutional sense, . . . except where the license is held to be a franchise." 45 Am. Jur. 2d *Intoxicating Liquors* § 117 (1969). However, North Carolina has taken the position that "[a] license to engage in a business or practice a profession is a property right that cannot be suspended or revoked without due process of law." 2 Strong, N. C. Index 2d *Constitutional Law* § 23 (1967). In *State v. Parrish*, 254 N.C. 301, 118 S.E. 2d 786 (1961), the judgment of a superior court suspending the license of a professional bail bondsman was held void. The bondsman had not violated any provisions of the applicable statute. His conduct had not been the subject of inquiry by the official board of either the county or city, and the bondsman himself had never had a hearing before either board. The court stated that "[t]he granting of such license is a right conferred by administrative act, but the deprivation of the right is a judicial act requiring due process." 254 N.C. at 303. The *Parrish* due process requirement has been applied in subsequent decisions of the appellate courts of this State to disciplinary proceedings against attorneys, *compare In re Burton*, 257 N.C. 534, 126 S.E. 2d 581 (1962) *with In re Bonding Co.*, 16 N.C. App. 272, 192 S.E. 2d 33 (1972), and to revocation of an operational license for massage parlors. *See Smith v. Keator*, 285 N.C. 530, 206 S.E. 2d 203 (1974).

[5]   We interpret G.S. 18A-15(12) to require the Board of Alcoholic Control to give notice and an opportunity to be heard to the applicant or permittee before a permit is refused or revoked for failure to produce records as ordered by the Board. In our opinion the Board exceeded its authority in refusing to renew petitioner's permit for 1 March 1974 without notice and an opportunity to be heard. Insofar as the declaratory judgment of the superior court found that "[t]he order of the Board of February 19, 1974, has deprived Robert E. Myers of a property right in his Distillery Representative's Permit # 38 in that it has taken such permit from him by the refusal to renew it, without due process of law," it is affirmed.

[6]   We finally consider whether the court should have ordered the Board to issue a permit to petitioner. The hearing in this matter by the superior court was not an appeal under G.S. 143-315 to review a decision of an administrative agency. The su-

perior court heard this matter in an independent action for a declaratory judgment and a mandatory injunction. Although petitioner prayed for a mandatory injunction, such relief was inappropriate under our holding herein that the Board's statutory power of investigation does not abridge petitioner's constitutional rights. In view of our determination that the statutory investigative authority of the Board is not unconstiutional, the authority of the superior court in this action was limited to a declaration that petitioner is entitled to a due process hearing before the Board, upon its order to produce records, before action is taken to revoke or deny renewal of his permit. Under the circumstances presented upon this appeal, it was error for the superior court to order the Board to issue a permit to petitioner.

Reversed in part.

Affirmed in part.

Judges PARKER and ARNOLD concur.