STATE OF NORTH CAROLINA v. GOLDEN A. FRINKS

No. 84

(Filed 25 January 1974)

1. Statutes § 4— construction — constitutional and unconstitutional interpretations

Where a statute or ordinance is susceptible of two interpretations, one constitutional and one unconstitutional, the courts should adopt the interpretation resulting in a finding of constitutionality.

2. Constitutional Law § 18— parading without permit — city ordinance — definite criteria — construction by court

A city ordinance prohibiting a parade upon city streets without obtaining a permit is construed (1) to mean that a permit may be denied by the city manager and city council only when the proposed parade, due to the time for which it is scheduled, its intended route or the proposed manner of its execution, irreconcilably conflicts with public safety and convenience and (2) to require that in passing upon such considerations, a systematic, consistent and just procedure be adopted by city officials to insure that administrative action is free from improper or inappropriate consideration; when so construed, the ordinance contains sufficiently definite, objective criteria to guide the licensing authority in issuing or refusing to issue parade permits. First Amendment to U. S. Constitution; Art. I, § 12 and Art. I, § 14 of the N. C. Constitution.

3. Constitutional Law § 18— parading without permit — city ordinance — burden of proof on appeal of permit denial — First Amendment

A city ordinance requiring a permit for a parade upon city streets did not impermissibly burden defendant's First Amendment rights by providing that in case of an appeal to the city council from a permit denial by the city manager "the applicant shall have the burden of proof of showing that the proposed parade will not be contrary to the health, welfare, safety and morals of the city."

4. Constitutional Law § 18— permit for parade — denial by city manager — appeal to city council — action within reasonable time

A city ordinance requiring a permit for a parade upon city streets is not unconstitutional on the ground that it fails to insure a prompt review by the city council of a permit denial by the city manager since (1) the ordinance does not involve First Amendment rights and (2) it is inferred that the ordinance requires the city council to act within a reasonable time upon an appeal from the city manager.

APPEAL by defendant from *James, J.,* at the 5 February 1973 Session of WILSON Superior Court.

On 30 November 1972, at approximately 9:00 p.m., defendant was arrested in the City of Wilson for participating in a parade without a permit in violation of Article VII, Sections 30-141 and 30-142 of the Wilson City Code.

Article VII of the Wilson City Code provides:

"WILSON CITY CODE, ARTICLE VII

## TRAFFIC

Article VII. Parades and Processions

Sec. 30-140. Definition

The term 'parade' as used in this article is defined as an assemblage of more than five (5) vehicles or twenty (20) pedestrians in a public procession along the streets and/or sidewalks of the city, but shall not include funeral processions or sightseeing groups or bands or marching groups proceeding to a point of assembly to participate in a parade. (Ord. No. 0-29-68 Sec. 13.108 11-14-68)

Sec. 30-141. Conformance to article provisions.

It shall be unlawful for any person to initiate, promote or participate in any parade over the streets and/or sidewalks of the city except in conformance with the provisions of this article. (Ord. No. 0-29-68, Sec. 13.109, 11-14-68)

Sec. 30-142. Permit required.

It shall be unlawful for any person to initiate, promote or participate in any parade within the city until a permit therefor has first been secured. (Ord. No. 0-29-68, Sec. 13.110, 11-14-68)

Sec. 30-143. Application for permit.

Parade permits may be obtained from the city manager upon application made in writing at least seventy-two (72) hours before the date on which the parade is to be held, upon application forms furnished by the city manager. (Ord. No. 0-29-68, Sec. 13.110, 11-14-68)

Sec. 30-144. Conditions of issuance.

The city manager shall issue parade permits unless he finds as a fact that the proposed parade will be contrary to the health, welfare, safety, and morals of the city. (Ord. No. 0-29-68, Sec. 13.111, 11-14-68)

State v. Frinks

Sec. 30-145. Denials; public hearing.

In the event an application for a parade permit is denied by the city manager, the applicant may apply to the city council for a hearing concerning the same.

At such hearing the applicant shall have the burden of proof of showing that the proposed parade will not be contrary to the health, welfare, safety and morals of the city. The city manager shall be heard in rebuttal to the granting of the application.

If, after hearing the applicant and the city manager, the city council shall find as a fact that the proposed parade will not be contrary to the health, welfare, safety and morals of the city, the application shall be granted by the city council. Otherwise the action of the city manager in denying the application shall stand. (Ord. No. 0-29-68, Sec. 13.112, 11-14-68)

Sec. 30-146. Compliance with provisions.

All parade permits shall be issued subject to the parade being held in conformity with all applicable provisions of this Code, state law and city ordinances, rules and regulations. Notwithstanding that a permit for the same has been issued by the city manager or the city council, the chief of police is hereby authorized, empowered and instructed to stop and disburse any parade conducted in violation of such provisions. (Ord. No. 0-29-68, Sec. 13.113, 11-14-68)

Sec. 30-147. Hours permitted.

No parades, or parts thereof, may be upon the streets or sidewalks of the city between the hours of 5:00 o'clock p.m. and 7:00 o'clock p.m.; provided, however, that upon application and a finding as a fact that to permit a proposed parade to be held upon the streets or sidewalks of the city during said hours will best serve the interest of the general public and will not be contrary to the health, welfare, safety and morals of the city, the city council may issue a permit for a parade to be held during such hours. (Ord. No. 0-29-68, Sec. 13.114, 11-14-68)

Sec. 30-148. Maximum number per day.

Not more than one parade may be conducted during any one calendar day, except Saturday. (Ord. No. 0-29-68, Sec. 13.115, 11-14-68)

Sec. 30-149. Routes, schedules.

Parade routes and schedules must be approved by the city manager or the city council before a permit for the same is granted. (Ord. No. 0-29-68, Sec. 13.116, 11-14-68)

Sec. 30-150. Number of units restricted.

Parades may not consist of more than seventy-five (75) motor vehicles but there shall be no limit on the number of bands or pedestrians participating therein. (Ord. No. 0-29-68, Sec. 13.117, 11-14-68)

Sec. 30-151. Distribution of materials.

It shall be unlawful for anyone riding in a parade to distribute from the vehicle upon which he is riding any handbills, advertising matter, candy, cigarettes, prizes or favors of any kind. (Ord. No. 0-29-68, Sec. 13.118, 11-14-68)

Sec. 30-152. Regulation of parking.

The chief of police, when expressly authorized and directed by the city manager or the city council, shall have the authority and duty to prohibit or restrict parking of vehicles along those parts of the streets of the city constituting a part of the route of a parade, or at the point of assembly or dispersal of a parade, for a period of from three (3) hours before its commencement to one hour after its dispersal. The chief of police shall post signs to such effect and it shall be unlawful for any person to park or leave unattended any vehicle in violation thereof. No person shall be liable for parking on a street unposted in violation of this section. (Ord. No. 0-29-68, Sec. 13.119, 11-14-68)

Sec. 30-153. Driving through funeral processions.

No vehicle shall be driven through a funeral procession, except fire department vehicles, police patrols and ambulances when the same are responding to calls. (Code 1952, Sec. 13.33)

Defendant was tried in Wilson County District Court on 12 December 1972 and found guilty. Judgment was entered sentencing him to imprisonment for a term of 30 days in the Wilson County Jail.

Defendant appealed to the Superior Court of Wilson County. Upon the call of the case in Wilson County Superior Court, and

State v. Frinks

prior to commencement of the trial, defendant moved to quash the warrant on the grounds that (1) it failed to allege a crime and (2) the City Ordinance was unconstitutional. The Motion was denied.

The State's evidence as reflected in the record of defendant's trial in Wilson Superior Court tends to show the following:

On 15 September 1972, defendant applied to the Wilson City Manager for a permit for a parade to be held on 17 September 1972. This permit was granted, and the parade was held on that date.

Defendant again applied to the City Manager on 12 October 1972 for a permit for a parade to be held on 15 October 1972. That application was denied. This decision was appealed to the City Council on 13 October 1972. On the same day, the City Council conducted a hearing and after finding as a fact that the proposed parade constituted a threat to the public safety and to the safety of the participants in the march, upheld the decision of the City Manager. However, the City Council proposed, as an alternative to the denied application, a parade over a different route, and offered to waive the provision in the City Ordinance requiring that application for a parade permit be made seventy-two hours prior to the date of the proposed parade. No application for a permit over the alternative route was made and no parade was conducted over either route.

On 30 November 1972, in response to a call, Robert Johnston, a police officer for the City of Wilson, went to the Atlantic Coastline Railroad Station located within the City of Wilson. There he observed defendant and approximately one hundred other people on and within the curbs of East Nash Street. Defendant was observed in the middle of the front row of the group of people with his arms linked to others in that row. Officer Johnston saw the group travel approximately fifty to seventy-five feet down the street. At that time, he advised defendant that he was under arrest. He also advised the other members of the group that they were violating the law, but if they would not participate further in the parade, they would not be arrested. However, approximately one hundred members of the group refused to dissipate and were also arrested.

Mr. J. T. Smith, a detective with the City of Wilson Police Department, was also present at the time of the arrests. He ob-

served a group of approximately one hundred people crossing the railroad tracks on Nash Street. The people were arrayed from curb to curb and completely blocked the street. He observed defendant in approximately the middle of the street.

At the time of defendant's arrest, Bruce T. Boyette was the City Manager for the City of Wilson. He testified that neither defendant nor any other person made an application for a parade permit for that area of the city for that date.

Defendant moved to dismiss at the close of the State's evidence. The motion was denied. Defendant offered no evidence and renewed his Motion to Dismiss which was again denied.

Defendant was found guilty of the charge of parading without a permit, and judgment was entered sentencing him to imprisonment for a term of thirty days in the Wilson County Jail.

Defendant appealed to the North Carolina Court of Appeals. The Court of Appeals found no error in the trial below. *State v. Frinks,* 19 N.C. App. 271, 198 S.E. 2d 570. Defendant appealed to this Court pursuant to G.S. 7A-30(1).

*Attorney General Robert Morgan by E. Thomas Maddox, Jr., Associate Attorney, for the State.*

*Paul, Keenan & Rowan by James E. Keenan for defendant appellant.*

BRANCH, Justice.

Defendant contends that Article VII of the Wilson City Code is a nullity because it contravenes his individual rights of assembly, petition and freedom of speech as guaranteed by the First Amendment to the Constitution of the United States and by Article I, Sec. 12 and Article I, Sec. 14 of the North Carolina Constitution and, therefore, the warrant charging him with the violation of that Article of the City Code should have been quashed.

He offers a three-pronged argument to support this contention.

[2] His first and principal argument is that Article VII of the Wilson City Code fails to contain definite, objective criteria to guide the licensing authority in issuing or refusing to issue parade permits.

**[1]** At the threshold of our consideration of the questions here presented, we note the well-recognized rule that where a statute or ordinance is susceptible of two interpretations, one constitutional and one unconstitutional, the courts should adopt the interpretation resulting in a finding of constitutionality. *City of Randleman v. Hinshaw,* 267 N.C. 136, 147 S.E. 2d 902; *Finance Co. v. Leonard,* 263 N.C. 167, 139 S.E. 2d 356; and *Nesbitt v. Gill,* 227 N.C. 174, 41 S.E. 2d 646.

We think that the law pertinent to decision of the question presented by defendant's first argument is stated in the cases of *Cox v. New Hampshire,* 312 U.S. 569, 85 L.Ed. 1049, decided 31 March 1941 and *Shuttlesworth v. Birmingham,* 394 U.S. 147, 22 L.Ed. 2d 162, decided 10 March 1969.

In *Cox v. New Hampshire, supra,* the defendants were five Jehovah's Witnesses who were convicted in the Municipal Court of Manchester, New Hampshire, for violation of a state statute prohibiting a parade without a special license.

The statute was silent as to the criteria governing the granting of permits, stating only:

> "Any city may create a licensing board to consist of the person who is the active head of the police department, the mayor of such city and one other person who shall be appointed by the city government, which board shall have delegated powers to investigate and decide the question of granting licenses under this chapter, and it may grant revocable blanket licenses to fraternal and other like organizations, to theatres and to undertakers." New Hampshire, P. L. Chap. 145, § 3.

Upon defendants' appeal to the New Hampshire Supreme Court, that court in refusing to overturn defendants' conviction, construed the challenged ordinance to mandate a systematic, consistent and just manner of treatment with reference to the convenience of the public use of highways and to require the licensing board to exercise its discretion in granting or denying permits in a uniform and reasonable manner, free from improper considerations or unfair discrimination. The defendants appealed to the United States Supreme Court. In affirming the decision of the New Hampshire Supreme Court, Chief Justice Hughes, speaking for the Court, in part, stated:

> "Civil liberties, as guaranteed by the Constitution, imply the existence of an organized society maintaining

public order without which liberty itself would be lost in the excesses of unrestrained abuses. The authority of a municipality to impose regulations in order to assure the safety and convenience of the people in the use of public highways has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding the good order upon which they ultimately depend. . . ."

\*    \*    \*

" . . . As regulation of the use of the streets for parades and processions is a traditional exercise of control by local government, the question in a particular case is whether that control is exerted so as not to deny or unwarrantedly abridge the right of assembly and the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places. *Lovell v. Griffin,* 303 US 444, 451, 82 L ed 949, 953, 58 S Ct 666; *Hague v. Committee for Industrial Organization,* 307 US 496, 515, 516, 83 L ed 1423, 1436, 1437, 59 S Ct 954; *Schneider v. Irvington,* 308 US 147, 160, 84 L ed 155, 164, 60 S Ct 146; *Cantwell v. Connecticut,* 310 US 296, 306, 307, 84 L ed 1213, 1219, 1220, 60 S Ct 900, 128 ALR 1352."

Chief Justice Hughes then acknowledged the aid given to the U. S. Supreme Court by the construction of the statute by the New Hampshire Court and referring to that Court's construction of the statute, stated:

". . . the state court considered and defined the duty of the licensing authority and the rights of the appellants to a license for their parade, with regard only to considerations of *time, place* and *manner so as to conserve the public convenience.* The obvious advantage of requiring application for a permit was noted as giving the public authorities notice in advance so as to afford opportunity for proper policing. And the court further observed that, in fixing time and place, the license served 'to prevent confusion by overlapping parades or processions, to secure convenient use of the streets by other travelers, and to minimize the risk of disorder. . . .' " (Emphasis added.)

The constitutionality of a city ordinance regulating the issuance of permits for a parade upon city streets was again considered by the United States Supreme Court in the case of

*Shuttlesworth v. Birmingham, supra.* There, Shuttlesworth was convicted of violating a Birmingham, Alabama, ordinance making it an offense to participate in any " 'parade or procession or other public demonstration' without first obtaining a permit from the City Commission." The Birmingham ordinance, in part, provided:

> "The commission shall grant a written permit for such parade, procession or other public demonstration, prescribing the streets or other public ways which may be used therefor, unless in its judgment the public welfare, peace, safety, health, decency, good order, morals or convenience require that it be refused."

The ordinance also required that the purpose for which the parade was to be held be set out in the written application.

More than a week before the proposed march, Shuttlesworth sent a representative to apply for a parade permit. Commissioner Connor denied the representative's request telling her, "No, you will not get a permit in Birmingham, Alabama, to picket. I will picket you over to the City Jail." Two days later, Shuttlesworth requested by telegraph a permit to picket, to which Commissioner Connor replied, "I insist that you and your people do not start any picketing on the streets in Birmingham, Alabama." Despite the denial of a permit, Shuttlesworth led a group of 52 people, two abreast in orderly fashion, some four blocks on a Birmingham street. The marchers did not interfere with pedestrians or block public streets. Shuttlesworth was arrested and upon trial was convicted of violating this ordinance.

The Alabama Court of Appeals reversed Shuttlesworth's conviction, holding that the ordinance had been applied in a discriminatory fashion, and was unconstitutional in that it imposed an "invidious prior restraint" without providing ascertainable standards for the granting of permits. *Shuttlesworth v. Birmingham*, 43 Ala. App. 68, 180 So. 2d 114.

The Alabama Supreme Court construed the ordinance to authorize "no more than the objective and even-handed regulation of traffic on Birmingham streets" and reversed the Court of Appeals. *Shuttlesworth v. Birmingham*, 281 Ala. 542, 206 So. 2d 348.

The United States Supreme Court granted certiorari. The Court held the ordinance as written and applied to be unconstitutional and reversed the Alabama Supreme Court.

In *Shuttlesworth*, the Supreme Court recognized the same pertinent principles of law enunciated in *Cox*, but refused to affirm Shuttlesworth's conviction under the state court's interpretation of the ordinance. The *Shuttlesworth* decision, however, did *not* reverse, but distinguished *Cox*. In so doing the Court, after reviewing the relevant circumstances of the case before it *inter alia*, stated:

> ". . . The petitioner was clearly given to understand that under no circumstances would he and his group be permitted to demonstrate in Birmingham, not that a demonstration would be approved if a time and place were selected that would minimize traffic problems. There is no indication whatever that the authorities considered themselves obligated—as the Alabama Supreme Court more than four years later said that they were—to issue a permit 'if, after an investigation [they] found that the convenience of the public in the use of the streets or sidewalks would not thereby be unduly disturbed.'

> "This case, therefore, is a far cry from *Cox v. New Hampshire, supra,* where it could be said that there was nothing to show 'that the statute has been administered otherwise than in the . . . manner which the state court has construed it to require.' Here, by contrast, it is evident that the ordinance was administered so as, in the words of Chief Justice Hughes, 'to deny or unwarrantedly abridge the right of assembly and the opportunities for the communication of thought . . . immemorially associated with resort to public places.' . . ."

Here the ordinance under attack is codified under the general heading of Traffic, and its language is directed to the *time, place* and *manner* of parades. It imposes no restraint upon speech concerning political matters or matters of public concern. Neither does it contain any inkling of discrmination against defendant or his associates.

The only provision possibly restrictive of expression precludes *distribution* of materials while *riding* in a parade. The enforcement of this provision of the ordinance might have an indirect effect on speech. However, this indirect effect is not fatal to the validity of the ordinance. The United States Supreme Court has held that when "speech" and "non-speech" elements are combined in the same course of conduct, a sufficiently important

governmental interest in regulating the non-speech element can justify incidental limitations on First Amendment freedoms. *United States v. O'Brien,* 391 U.S. 367, 20 L.Ed. 2d 672. There is an easily recognized relation to public health and safety in this portion of the ordinance since the distribution of materials would naturally result in (1) pedestrians, particularly children, crowding the streets in close proximity to moving vehicles, (2) an accumulation of trash and litter in the streets.

The regulation of the streets for the safety, comfort and convenience of the general public by this portion of the ordinance is such regulation as would justify an incidental limitation of constitutional rights.

We find that *Cox* controls the question under consideration. In *Cox,* the Supreme Court approved an ordinance which was completely void of criteria for issuing or denying a permit. The surrounding relevant circumstances in *Cox* and in instant case disclose a fair, non-discriminatory administration of the ordinance which did not contravene the rights of assembly or communication of thought. The only apparent distinction between the two cases is that the ordinance in the present case contained the broad language "health, welfare, safety and morals," while the ordinance in *Cox* was without criteria to guide the local authorities in issuing or rejecting permits.

We recognize that the courts have condemned the use of the broad terms used in instant ordinance as a prior restraint on constitutional rights. *Staub v. City of Baxley,* 355 U.S. 313, 2 L.Ed. 2d 302; *Shuttlesworth v. Birmingham, supra.* Yet, we cannot perceive how the use of these broad terms in the Wilson ordinance would create a more invidious restraint upon First Amendment freedoms than the ordinance in *Cox* which was devoid of guiding criteria.

Our Court of Appeals construed the ordinance to mean, "that the city manager and city council may only deny a permit when the proposed parade, due to the *time* for which it is scheduled, its intended *route,* or the proposed *manner* of execution, irreconcilably conflicts with public safety and convenience." Moreover, in the view of the Court of Appeals, "the ordinance required that in passing on the above considerations, a *systematic, consistent* and *just* procedure be adopted by city officials to insure that administrative action is free from improper or inappropriate consideration." (Emphasis added.)

It is implicit in the holdings in *Cox* and *Shuttlesworth* that the construction of the challenged ordinance by the New Hampshire Court related back to the time of its passage. Thus, if the Court of Appeals correctly construed the Wilson ordinance, the language adopted in its construction has the same effect as if originally set forth in the ordinance.

We approve and adopt the construction of the Wilson ordinance by our Court of Appeals.

[2] We therefore hold that, as construed by our Court of Appeals and this Court, Article VII of the Wilson City code contains sufficiently definite, objective criteria to guide the licensing authority in issuing or refusing to issue parade permits.

[3] Defendant next argues that Article VII of the Wilson City Code impermissibly burdens his First Amendment rights by requiring that in case of an appeal to the City Council from denial of a permit, "the applicant shall have the burden of proof of showing that the proposed parade will not be contrary to the health, welfare, safety and morals of the city." In support of this contention, defendant cites *Freedman v. Maryland*, 380 U.S. 51, 13 L.Ed. 2d 649 and *Speiser v. Randall*, 357 U.S. 513, 2 L.Ed. 2d 1460.

In *Freedman*, the Court held that a Maryland motion-picture censorship statute making it unlawful to exhibit a motion picture without having first obtained a license was unconstitutional. The Court held that the statute violated the guaranty of freedom of expression, among other reasons, because upon the censor's disapproval the exhibitor was forced to assume the burden of instituting *judicial* proceedings and of persuading the court that the film was *protected expression*.

In *Speiser*, appellants were veterans who claimed the veteran's property tax exemption provided for by the California Constitution. The California legislature enacted a statute requiring an applicant for the tax exemption to complete a loyalty oath as a condition for his application. Appellants refused to sign such an oath and were denied the tax exemption. The Court held that when the constitutional right to speech is sought to be deterred by a State's general taxing power, due process demands that speech be unencumbered until the State comes forward with sufficient proof to justify its inhibition.

The case before us is clearly distinguishable from *Freedman* and *Speiser*. In both *Freedman* and *Speiser*, the Legislature

purported to directly restrict First Amendment rights. Here, under our construction of Article VII of the Wilson City Code, there is no intent to curb First Amendment rights. In *Speiser* and *Freedman,* the ordinances there considered did not purport to regulate the streets for the safety, comfort or convenience of the general public. In this case, the ordinance under attack is a traffic ordinance which requires a systematic, competent non-discrminatory administration of its provisions.

The State has the power to regulate procedures under which its laws are to be carried out, including placing the burden of producing evidence and the burden of persuasion, unless in so doing it offends some principle of justice deeply rooted in the traditions and conscience of our people. *Snyder v. Massachusetts,* 291 U.S. 97, 78 L.Ed. 674. Defendant Frinks was not required to state the purpose of his parade. He was not required to convince the City Council that his proposed parade constituted protected expression. Rather, the sole issue upon which he had the burden of proof is whether the proposed parade would interfere with traffic, public safety, and the public convenience.

We, therefore, hold that the ordinance does not place an impermissible burden on defendant to justify the exercise of his First Amendment freedoms.

[4] Finally, defendant attacks the ordinance on the ground that it fails to insure a prompt review in the event the City Manager should deny an application for a parade permit. Defendant cites and relies upon *Freedman v. Maryland, supra,* and *Shuttlesworth v. Birmingham, supra,* for the proposition that there must be provision for prompt review of any denial of permits or licenses involving an applicant's First Amendment rights. The holdings in these cases are bottomed on First Amendment rights. The Wilson Ordinance, as we have construed it, does not violate an applicant's First Amendment rights. Thus the recognition by *Freedman* and *Shuttlesworth* of extraordinary urgency for prompt review of questions involving the First Amendment guarantees does not exist in this case.

Moreover, it should be borne in mind that in construing this ordinance we may draw reasonable inferences and consider proper implications to the end that the ordinance may be declared valid. In so doing, we are guided by the rule that when a duty is imposed upon a public agency there arises, of necessity, an implication that adequate power is bestowed upon the agency

to perform the duty in accord with the federal and state constitutions. *Hill v. Lenoir County,* 176 N.C. 572, 97 S.E. 498; *Lowery v. School Trustees,* 140 N.C. 33, 52 S.E. 267.

We consider it proper to infer that when there is an appeal from the decision of the City Manager, the provisions of the ordinance under consideration require the City Council, within a reasonable time, to conduct a hearing, review the decision of the City Manager, and uphold or reverse such decision.

The inferences and implications which we draw from the language of this ordinance are buttressed by the action of the Wilson City Council in hearing and ruling on the denial of an earlier application for a parade permit on the same day defendant requested a hearing.

There is ample provision for review by the City Council within a reasonable time and thereafter an applicant for a parade permit has ready access to the North Carolina General Court of Justice through regular and recognized procedures.

The local government's control of its streets pursuant to the provisions of Article VII was not exercised so as to deny or unreasonably abridge defendant's First Amendment freedoms.

We hold the ordinance to be valid under both the Federal and the North Carolina Constitutions.

The decision of the Court of Appeals is

Affirmed.